On Application for Rehearing
En Banc. Rehearing denied.
TATE, Judge.
I must respectfully dissent from the denial of a rehearing. In my opinion, the majority has virtually nullified the benefits intended by the in forma pauperis statute.
Since 1912, this statute has granted impoverished litigants the privilege of prosecuting or defending proceedings in the Louisiana courts “without paying the costs in advance, or as they accrue, or furnishing se *721 curity therefor.” LSA-C.C.P. Art. 5181 (retaining such provisions of Act 156 of 1912).
The majority deprives the pauper litigant of the ability to enforce this privilege, for the majority has held that the pauper cannot obtain the witnesses needed to prove his case unless he advances in cash their fees and travel expenses.
The legislature simply could not have intended to give the litigant the privilege of prosecuting or defending an action in forma pauperis, without also intending to give him the means of doing so by securing the attendance of witnesses. To hold otherwise is to make a mockery of the legislative privilege. It is as if the legislature solemnly gave one party the right to step into the ring zmth his hands tied behind his back to fight another party — an empty right indeed !
Actually, the narrow question before us is only whether the Clerk of Court is under a mandatory duty to subpoena witnesses for a pauper litigant when requested to do so, without requiring the pauper to advance in cash the fees and travel expenses of those witnesses. This is the only question raised by the pleadings in the present suit. (Although the trial court also indicated that the police jury must advance the funds to pay these expenses, the issue of who, if anyone, will be required to pay these expenses in advance is not actually raised by the pleadings; the only issue there raised is whether the clerk of court is under a mandatory duty to issue witness subpoenas for a pauper litigant.)
This suit arose when the clerk of court refused to issue subpoenas to compel the appearance of witnesses, unless the pauper plaintiff first deposited in cash the witness fees and travel expenses which would ordinarily be required of a non-pauper party (excepting a public body). The trial court held that the clerk was required to issue these subpoenas without prepayment of the witness fees.
As I see it, the words of the statute man-datorily require the performance of this duty by the clerk.
Under LSA-C.C.P. Art. 5181, an impoverished person may prosecute or defend a suit “without paying the costs in advance, or as they accrue, or furnishing security therefor.” (The official revision comment notes: “This article makes no change in the laz v.”)
Under LSA-C.C.P. Art. 5185, the privileges to which an in forma pauperis plaintiff (or defendant) is “entitled” include: “(1) All services required by law of a sheriff, clerk of court * * * in, or in connection with, the judicial proceeding, including but not limited to * * * the issuance and service of subpoenas and process * * (The privileges also include “the taking and transcribing of testimony * * * The right to a trial by jury, and to the services of jurors * * * ”, etc.)
Under the plain statutory language, the clerk must issue subpoenas and they must be served, without advance payment of court costs. I see no escape from this mandatory language of the statute.
It is true that the former statute also expressly stated that the pauper litigant could obtain without prepayment of fees “all services required by law in any legal proceedings, by * * * witnesses in any parish where any part of the proceedings are being conducted,” 13 :4525, and that the wording of this provision was changed to omit the word, “witnesses” in connection with the enactment of the new Code of Civil Procedure; Article 5185. But what situation might arise if a witness refused to testify because he had not been prepaid his fee, or if a witness sought advance payment of his fee, is not before us now — we are here only concerned with the unambiguous language of LSA-C.C.P. Art. 5185 stating that a pauper litigant is “entitled” to the issuance of witness subpoenas by the clerk of court.
*722 I do not think we can ascribe any intention to subvert the in forma pauperis statute either to the Law Institute or to the legislature by the omission of the word “witnesses” from the former statute’s listing of those who must furnish their own services without prepayment or bonding of costs, especially in view of the complete lack of any indication in the official revision comments of such a drastic change in forma pauperis remedy. Frankly, considering the holding of our Supreme Court in Hartford v. Mobley, 233 La. 956, 98 So.2d 250 (to be discussed below), I think the legislative intention, if any, of the change was simply no longer to require witnesses to serve without prepayment of witness fees.
The Supreme Court flatly held in Hartford v. Mobley, cited above, that the in for-ma pauperis statute must be interpreted so as to effectuate its intent and provisions. To do so, the Court held that, ultimately, witnesses fees and jurors fees should be paid by the police jury of the parish “in which the trial is held in order for the pauper to obtain the rights accorded by the statute”, 98 So.2d 253. Thus, although we have not yet reached that question, I agree with the trial court that, under the Hartford decision, when the question is properly presented, the witness fees must be paid by the police jury in pauper cases (as in criminal proceedings, cf. LSA-R.S. 15:152.6, 529.9), pending their collection from the party cast.
Therefore, LSA-C.C.P. Art. 5185 must be viewed as having been enacted in the light of the never-overruled and the still binding decision of our Supreme Court in Hartford v. Mobley, to the effect that the legislature, in granting paupers the right to litigate without the pre-payment or bonding of costs, could not have intended to confer an empty and meaningless right, and must by implication have intended that the fees be paid from public funds in order to effectuate the legislatively-given right.
My earnest brethren of the majority may have felt that, to interpret the statute as the Supreme Court did, would create too heavy a burden on police jury treasuries.
To this I might simply state that such a heavy burden has not been manifest during the fifty years that have elapsed since the legislature granted paupers the right to litigate without payment or bonding of costs. More important, it is not for us as an intermediate appellate court to refuse to apply any statute or any ruling of our State Supreme Court simply because we may doubt its wisdom.
The writer personally feels that the majority has shied at an imaginary phantom. In the writer’s experience as a lawyer, relatively few witnesses are adamant or even seriously concerned about receiving witness fees in pauper suits — most witnesses apparently are willing to accept the principle that justice for all may sometimes require individual sacrifice from some.
If justice and a judicial system were simply a matter of dollars and cents, then perhaps the cost of government could be decreased by not having any court system at all. Let private rights be enforced by private might, so to speak, even though that might mean that the stronger and the richer might usually prevail.
On the other hand, I think that the legislature has decreed that justice and our judicial system exist for the poor and the weak as well as for the rich and the strong. To hold that the legislature gave a pauper the right to litigate without the prepayment or bonding of costs, but not to summon and to have the services of witnesses without first paying them from his non-existent funds, is to make a mockery of the privilege given by the legislature in order that the pauper, as well as the person of means, may have access to our courts to advance his claim or to present his defense.
To reiterate, however, the issue of who (if anyone) is to pay the fees of the witnesses, is'not before us. No witness has sought relief from testifying because he has not received his witness fee. The only issue *723 before us is whether the clerk of court must perform his duty of issuing the witnesses fee without the advance payment in cash of witness fees, as mandatorily required by the statute permitting impoverished parties to litigate. It is not for this court to vitiate the privilege granted by the legislature to paupers to have their day in court by a ruling inconsistent with the legislative intent and directly contrary to the specific wording of the legislative act conferring such a privilege.
For these reasons, I respectfully dissent from the refusal of this court to grant a rehearing, for I think the majority committed error in reversing the trial court.